UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 25-25575-CIV-MORENO**

JOSE RAMON LOPEZ REGUEIRO,

        Plaintiff,

vs.

DELTA AIRLINES, INC,

        Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant Delta Air Lines' Motion to Dismiss and Claim of Unconstitutionality **(D.E. 16)**, filed on **April 28, 2026**. THE COURT having considered the motion, the response in opposition, the reply, oral arguments from both parties, pertinent portions of the record, and being otherwise fully advised in the premises, it is **ADJUDGED** that the Motion is **DENIED**. As explained below, Plaintiff Jose Ramón López Regueiro sufficiently alleged ownership of a claim to the José Martí International Airport and trafficking by Defendant Delta Airlines since before December 1961, which is sufficient to state a claim. Plaintiff asserts this claim pursuant to Title III of the Helms-Burton Act, in which Congress created a private cause of action. The Court declines Delta's invitation to find the Act unconstitutional.

## BACKGROUND

Plaintiff Jose Ramón López Regueiro filed this suit against Defendant Delta Air Lines, Inc. pursuant to Title III of the Cuban Liberty and Democratic Solidarity Act (the "Helms-Burton Act" or the "Act"), codified at 22 U.S.C. § 6081-6085. The Helms-Burton Act provides United States

nationals who hold a claim to property that was confiscated by the communist Cuban government with a private cause of action against persons who have "trafficked" in such property. 22 U.S.C. § 6082(a). Plaintiff is a U.S. national who claims ownership of the José Martí International Airport, the property that was confiscated by the Cuban government in or around May 1959. Plaintiff alleges that Defendant violated the Helms-Burton Act when it trafficked in the property by using the Airport to transport passengers. Plaintiff's allegations are summarized as follows.

Plaintiff's father, Jose López Vilaboy, owned a company—Compañia de Aeropuertos Internacionales, S.A. ("CAISA")—which purchased the José Martí Airport from Pan American Airways on November 14, 1952. Compl. at ¶ 21; ¶ 35. After the purchase, Plaintiff alleges that his father modernized the airport, built it out, and named it the José Martí Airport. *Id.* Then, in or around May 1959, the Cuban regime confiscated the Airport and CAISA, thus stealing the airport from his father—Vilaboy—who was its rightful owner. *Id.* at ¶ 22. His father then fled Cuba. *Id.* To this day, the Cuban government maintains possession and control of the Airport. *Id.* at ¶ 24.

Jose López Vilaboy, Plaintiff's father, died intestate in Miami Beach, Florida on March 2, 1989. Compl. at ¶ 27. According to Plaintiff, when his father died, ownership of CAISA and the Airport passed to him through intestate succession. *Id.* A Florida probate court declared Plaintiff the heir of one-half of his father's estate in an order on November 30, 2010. *Id.* at ¶ 27, n.9; *see also* Plaintiff's Response at 10. Plaintiff also alleges that he owns 100% interest in CAISA and the Airport, and he has been in possession of all CAISA's paper shares since his father left Cuba. Compl. at ¶ 26, ¶ 28.

Defendant Delta has transported passengers to and from the José Martí International Airport since before December 1, 1961, and continues to do so today. Compl. at ¶ 35. Therefore, Plaintiff alleges Defendant has known that his father, through CAISA, was the Airport's owner

and that the Cuban government confiscated the Airport in 1959. And since the Helms-Burton Act was passed in 1996, Defendant has been on notice that trafficking in the Airport would subject it to liability. *Id.* at ¶ 36. Plaintiff also alleges that he put Defendant on notice on July 22, 2019, when he informed Defendant of his intent to commence an action unless it immediately ceased trafficking at the Airport. *Id.* at ¶ 37. But Defendant has continued to use the Airport, allegedly, without authorization. *Id.*, ¶ 39. And Defendant allegedly injured Plaintiff because it has never paid any compensation or indemnification to Plaintiff for its allegedly unlawful trafficking at the Airport. *Id.* at ¶ 40.

## **LEGAL STANDARD**

A court may grant a motion to dismiss a pleading if the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss should be granted only when the pleading fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading must contain more than labels, conclusions, a formulaic recitation of the elements of a cause of action, and naked assertions devoid of further factual enhancement. *Id.* The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully").

A court ruling on a motion to dismiss must accept the well-pled factual allegations as true and view the facts in the light most favorable to the plaintiff. *Jones v. Fransen*, 857 F.3d 843, 850 (11th Cir. 2017). But the court need not accept as true allegations upon information and belief that

3

lack sufficient facts to make the allegations plausible. *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550 U.S. at 551, 557). The court also need not accept legal conclusions couched as factual allegations. *Diverse Power, Inc. v. City of LaGrange, Ga.*, 934 F.3d 1270, 1273 (11th Cir. 2019). "Under Rule 12(b)(6), dismissal is proper when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015) (citation omitted).

## DISCUSSION

Title III of the Helms-Burton Act creates a private cause of action. 22 U.S.C. § 6082(a)(1). It states: "any person that ... traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property." *Id.* § 6082(a)(1)(A). A person "traffics" in confiscated property" if, among other things knowingly and intentionally "engages in a commercial activity using or otherwise benefiting from confiscated property," or "participates in, or profits from, trafficking ... by another person, or through another person, without the authorization of any United States national who holds a claim to the property." *Id.* § 6023(13)(A). To result in liability, the trafficking must have taken place after November 1, 1996 (three months after the effective date of the Act, which was August 1, 1996). *See id.* § 6085(a).

In this case, to state a claim, Plaintiff must sufficiently allege: (1) the property at issue—the José Martí International Airport—was confiscated by the Cuban government on or after January 1, 1959; (2) Plaintiff López Regueiro was a U.S. national when he commenced this action; (3) Plaintiff owns a claim to the airport; (4) Plaintiff acquired his interest in the airport before March 12, 1996; and (5) Defendant Delta Airlines trafficked in the property after November 1, 1996.

4

Defendant Delta argues that Plaintiff has not sufficiently alleged ownership of a claim to the confiscated property, that Plaintiff has not sufficiently alleged trafficking, and that the Act's creation of a private cause of action is unconstitutional. The Court addresses each argument in turn.

### I.  Plaintiff Sufficiently Alleged Ownership of a Claim to the José Martí International Airport

#### a. *Plaintiff acquired his claim in time*

To bring suit, Plaintiff must have acquired his claim to the airport before March 12, 1996. 22 U.S.C. § 6082(a)(4)(B). That provision includes acquiring the claim by inheritance. *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 931 (11th Cir. 2023). The Eleventh Circuit also clarified in *Garcia-Bengochea* that to "acquire" means to "gain possession or control of; to get or obtain." *Id.* at 930. Plaintiff advances two alternative theories of acquisition. The Court determines that Plaintiff sufficiently alleged acquisition of a claim based on possession of paper shares.

#### i. *Possession of CAISA shares*

Plaintiff argues that since his father left Cuba, Plaintiff has owned a claim to the airport via possession of paper shares of CAISA. Plaintiff alleges that his father's company, CAISA, owned the Airport at the time of confiscation, and that Plaintiff has been in possession of all CAISA's shares since his father left Cuba. He also alleges that he is the owner of 100% interest in CAISA and the airport.

Defendant argues that Plaintiff's possession of CAISA shares is irrelevant because he did not plead that possession of the shares conferred ownership. In fact, Defendant submits that he pleaded the opposite: that ownership did not pass to Plaintiff until his father's death in 1989. Further, Defendant argues that when the Cuban government confiscated the airport and the company from Vilaboy, the paper shares became "meaningless" because Vilaboy no longer

possessed ownership of the company or the Airport. Defendant posits that Vilaboy only retained a claim for compensation, which he did not relinquish or transfer to Plaintiff.

The Eleventh Circuit has made clear that even without direct ownership, shareholders at the time of confiscation can assert claims based on confiscation of the corporate property. *Fernandez v. Seaboard Marine, LTD.*, 135 F.4th 939, 949-50 (11th Cir. 2025). The court reasoned that the Helms-Burton Act protects those who had an interest in the confiscated property, even if they did not own the property itself. *Id.* In turn, this Court finds that even if possession of the shares did not confer ownership to Plaintiff, as an alleged shareholder of the company Plaintiff may have a claim under the Act.

While recognizing the Cuban regime's confiscations were wrongful, the Helms-Burton Act acknowledges the confiscations were effective and terminated property ownership. Those that had property interests at the time of confiscation did not retain ownership of the property but only a claim to the confiscated property under Title III of the Act. *Glen v. Club Mediterranee, S.A.*, 450 F. 3d 1251, 1255 (11th Cir. 2006). Defendant argues that when ownership of CAISA was confiscated from Vilaboy, the shareholder interests were also terminated. Therefore, the alleged transfer of the paper shares from Vilaboy to Plaintiff was ineffective because they belonged to the Cuban government. Defendant's argument assumes that Plaintiff obtained the paper shares after confiscation, which has not yet been determined. Viewing the alleged facts in the light most favorable to the Plaintiff, if Plaintiff possessed the paper shares at the time of confiscation, then as an alleged shareholder of the company Plaintiff may retain a claim under the act. This is a factual issue that cannot be resolved at the motion to dismiss stage.

Even if Plaintiff obtained the paper shares after confiscation, this Court finds that the possession of the shares themselves may provide Plaintiff with a claim under the Act, so long as

he acquired shareholder status prior to March 12, 1996. The Eleventh Circuit has concluded that a claim to the confiscated property can be effectively transferred through intestate succession from a former owner. *Garcia-Bengochea*, 57 F.4th at 931. This Court has no reason to think the same is not true for former shareholders. In other words, if a claim can be transferred from a former owner, so too can a claim be transferred from a former shareholder.   Therefore, this Court concludes that like prior owners of the confiscated property, prior shareholders retain a claim under Title III that can be transferred by possession of paper shares.  Accordingly, by pleading possession of CAISA's paper shares, Plaintiff has sufficiently alleged that he acquired a claim to the airport before March 12, 1996.

Alternatively, Plaintiff alleges pre-1996 ownership of a claim to the airport based on his inheritance of the claim through intestate succession upon the death of his father in 1989. Because Plaintiff's shares-based theory of acquisition under the Act is sufficient to state a claim, this Court declines to decide the inheritance issue at this stage in the proceedings.

### b.  *Defendant's claim to the property does not bar Plaintiff's suit*

The Helms-Burton Act recognizes certified and uncertified claims. Certified claims are those recognized by the Foreign Claims Settlement Commission; uncertified claims are not recognized by the Commission. 22 U.S.C. § 6083(a). This case allegedly involves a plaintiff with an uncertified claim and a defendant with a certified claim to the same property. Plaintiff disputes that Defendant owns a certified claim to the airport or any portion of it. Defendant asks this Court to take judicial notice of a Foreign Claims Settlement Commission decision that Defendant argues confirms it has a certified claim to the airport. If Defendant has a certified claim, Defendant argues that Plaintiff's suit is barred under sections 6082 and 6023 of the Act. Similarly, Defendant submits that Plaintiff's suit is barred under section 6082 because of other certified claims to the Airport.

Preliminarily, the Court must determine whether Defendant has a certified claim to the property at issue in this suit—the José Martí International Airport. At Defendant's request, the Court takes judicial notice of the Foreign Claims Settlement Commission decision relating to Delta under Federal Rule of Evidence 201. Defendant argues that because the decision indicates that Delta maintained an office at the airport, Delta owns a certified claim to at least a portion of the Airport. Defendant's Motion at 9. Plaintiff counters that Delta only has a certified claim to the personal property and funds specifically listed in the decision. Plaintiff's Response at 3. The Court finds that Delta owns a certified claim to "[p]ersonal property, furniture, etc.," "[b]ank accounts," "[c]ash in several offices," "[d]eposits with utility companies," and a "[s]ecurity deposit on a lease" for an office in Havana worth "$212,396.08." Defendant's Motion (Exhibit B). However, it is not clear to the Court that Delta retains a certified claim to any portion of the Airport itself. That question remains unresolved and requires further development of the record. Accordingly, the Court declines to resolve Defendant's legal arguments regarding §§ 6082 and 6023 of the Act until a later stage in the proceedings. That said, the Court advises the parties that based on the record as it stands, the Court is inclined to conclude that Delta does not have a certified claim to the Airport or any portion of it.

At Defendant's request, the Court also takes judicial notice of the Foreign Claims Settlement Commission decision related to Starwood Hotels. The Court finds that Starwood Hotels owns a certified claim to three tracts of land and a bank account. This includes a tract that is "425,000 square meters of land adjacent to the airport" that the Cuban government seized "for extension of the airport runway." Defendant's Motion (Exhibit C). This suggests that Starwood Hotels has a certified claim to land that was adjacent to the Airport. But again, it is not clear

8

whether Starwood Hotels owns a certified claim to any portion of the property at issue in this suit. That question remains unresolved and requires further development of the record.

## II.     Plaintiff Sufficiently Alleged Trafficking

To survive a motion to dismiss, Plaintiff must sufficiently allege that Defendant trafficked in the confiscated property. A person "traffics in confiscated property" if, among other things, that person knowingly and intentionally "engages in a commercial activity using or otherwise benefiting from confiscated property," or "participates in, or profits from, trafficking . . . by another person, or through another person, without the authorization of any United States national who holds a claim to the property." 22 U.S.C. § 6023(13).

### a.  Scienter: "Knowingly and Intentionally"

Preliminarily, Plaintiff sufficiently pleads that Defendant "engage[d] in a commercial activity using or otherwise benefiting from confiscated property." Plaintiff alleges that since the airport was confiscated, Defendant has used the airport for "daily business dealings" between Delta and the Cuban government without authorization. Compl. ¶ 24. Specifically, Delta has allegedly "solicited and sold reservations and operated passenger flights to and from the [a]irport" and provided services for Floridians to "travel and send mail, excess baggage and cargo to the [a]irport." *Id.* at ¶¶ 25, 31-32, 36-41.

Plaintiff also sufficiently pleads that Defendant's conduct was "knowing and intentional." Plaintiff alleges that his father's ownership, through CAISA, of the airport prior to its confiscation is "well-known and widely publicized, particularly within the airline industry." Compl. ¶ 35. And Delta has known as much, because of its "long history of flight operations in Cuba, including to and from the [a]irport now and before December 1, 1961. *Id.* Additionally, Plaintiff alleges that Defendant has "been on notice" that flying to and from the Airport would result in liability since

the Act's passage in 1996 and President Clinton's statements saying so. *Id.* at ¶ 36. Plaintiff also alleges that Plaintiff "informed [Delta] of his intent to commence an action unless they immediately ceased to traffic in the [a]irport" on July 22, 2019. *Id.* at ¶ 37. And Defendant's conduct was not authorized by Plaintiff or any other U.S. national, who may have a claim to the airport. *Id.* at ¶ 39. The Court acknowledges that some of Plaintiff's allegations regarding knowledge and intent are conclusory. However, the Plaintiff has provided a sufficient factual basis to support a reasonable inference that Delta's conduct was knowing and intentional, at least since July 22, 2019. Accepting the Complaint as true and viewing the facts in the light most favorable to Plaintiff, this Court concludes that Plaintiff sufficiently alleged trafficking under the Act.

### b. *Lawful-travel Exception*

Defendant argues that it cannot be liable for trafficking under the Act because it had authorization to fly to the airport. Defendant asks this Court to apply the lawful-travel exception— a specific carve out from the definition of "trafficking" for "transactions and uses of property incident to lawful travel to Cuba." 22 U.S.C. §6023(13)(B). Defendant posits that the Complaint only pleads lawful travel and therefore Delta's activity clearly falls within the exception. To support this point, Defendant relies on United States Department of Transportation Orders authorizing Delta flights to the airport. Defendant's Motion at 15-16. At Defendant's request, the Court takes judicial notice of the Department's Orders under Federal Rule of Evidence 201. In so doing, the Court finds that in 2016 the Department gave Delta authorization to fly three times per day to the José Martí International Airport, then added an additional flight, and confirmed the authorization for all four flights in 2018. Defendant's Motion (Exhibits A, E, & F).

Both parties agree that the lawful-travel exception is an affirmative defense. This Court has previously indicated that as such, the defendant bears the burden of proving the lawful-travel

exception and the plaintiff need not "plead around" it. *Rivero v. Expedia Group, Inc.*, No. 19-22629-CIV, 2023 WL 12039284, at *6 (S.D. Fla. Sept. 13, 2023). Because Defendant bears the burden of proof, a motion to dismiss cannot be granted based on an affirmative defense unless the defense is apparent on the face of the Complaint. Defendant's Motion at 15 (citing *Wells v. Brown*, 58 F.4th 1347, 1356-57 (11th Cir. 2023) (en banc)). Defendant suggests that is the case here, and to permit the case to proceed would raise due process concerns and entitle every plaintiff to a fishing expedition. Defendant's Reply at 8-9. That is not so.

This Court finds that a decision regarding the lawful-travel exception is premature on the instant motion to dismiss. Defendant has not proven that the lawful-travel exception is apparent from the record before the Court. Even considering the Department of Transportation's Orders, that question remains unresolved.

## II.    The Helms-Burton Act is Constitutional

Defendant argues that the Helms-Burton Act is unconstitutional because Congress delegated legislative powers to the President, thus undermining separation of powers, a fundamental constitutional principle. Defendant's Motion at 17; Defendant's Reply at 9 (citing *Marshall Field & Co. v. Clark*, 143 U.S. 649, 692 (1892)). Title III of the Act created a private cause of action. Congress included a suspension provision that gives the President authority to suspend and reinstate the private cause of action without approval from Congress. 22. U.S.C. § 6085. Defendant submits that suspension or reinstatement of the private cause of action amounts to an amendment to the Act and creation of a private cause of action. But creating a private cause of action is a uniquely legislative act. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("the Supreme Court has long-recognized that 'private rights of action to enforce federal law must be created by Congress'"). So, Defendant's argument is that because the suspension provision allows

11

the President to create a private cause of action, the Act constitutes an unconstitutional delegation of legislative power to the President. In a footnote, Defendant also argues that the suspension provision violates the Presentment Clause by "permitting the President to effectively amend the Act without satisfying the Constitution's 'finely wrought' procedures." Defendant's Motion at 18, n.10 (citing *Clinton v. City of New York*, 524, U.S. 417, 439-40, 447 (1998)).

Further, Defendant argues that the suspension provision cannot be severed because there is "strong evidence" that the Act would not have been enacted without it. Defendant's Motion at 18 (citing *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 234 (2020) ("When Congress has expressly provided a severability clause, [the Court] will "presume that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision … unless there is strong evidence that Congress intended otherwise." (internal quotations omitted)).

In response, Plaintiff first defends the constitutionality of the Act by arguing that Congress did not delegate legislative power at all. Plaintiff reasons that Congress created the private cause of action and the President merely has authority to temporarily suspend enforcement of the statute, which is clearly within the purview of the executive branch. Plaintiff's Response at 19 (citing *Consumer Fin. Prot. Bureau v. MoneyLion Techs. Inc.*, 799 F. Supp. 3d 152, 169 (S.D.N.Y. 2025)). Congress gave the President the power to implement a law, not enact it. *Id.* at 20. Next, Plaintiff submits that if the Court finds that Congress delegated legislative power to the President, the Court should not find that the delegation violates the nondelegation doctrine because Congress supplied a sufficient intelligible principle. *Id.* at 18-20; *see also Fed. Comm'ns Comm'n v. Consumers' Rsch.*, 606 U.S. 656, 672 (2025). Specifically, Congress provided the President with a "general policy" to pursue—advancing national interests—and "boundar[ies]"—limiting suspension to six-

month periods, only upon specified findings, and with advance written notice to Congress. *Id.* at 19-20.

This Court concludes that Congress did not delegate legislative power to the President. The suspension provision gives the President authority to execute the law, which is a quintessentially executive power. *Buckley v.* Valeo, 424 U.S. 1 (1976) (noting that authority to enforce the laws is an executive function and distinguishable from legislative power). Finding no delegation of legislative power, the Court need not address the nondelegation doctrine. Additionally, this Court finds that the President's suspension and reinstatement of a private cause of action—that Congress created—is merely an implementation of the law. It does not amount to repealing and amending a law, which would implicate the Presentment Clause. To say otherwise, Defendant relies on the Court's analysis in *Clinton v. City of New York*, 524 U.S. 417 (1998).

In *Clinton*, the President had exercised his authority under the Line Item Veto Act to cancel one provision in the Balanced Budget Act of 1997 and two provisions in the Taxpayer Relief Act of 1997. *Clinton v. City of New York*, 524 U.S. 417 (1998). The issue before the Court was whether the cancellation procedures set forth in the Line Item Veto Act violated the Presentment Clause. *Id.* at 421. The Court held that the cancellations pursuant to the Line Item Veto Act violate the Presentment Clause because they "are the functional equivalent of partial repeals of Acts of Congress." *Id.* at 444. The Court declined to determine whether the Act violated separation of powers principles. *Id.* at 447-48. ("the only issue we address concerns the 'finely wrought' procedure commanded by the Constitution" (citation omitted)).

*Clinton* is distinguishable from the case before this Court for three reasons. First, in *Clinton*, the President cancelled provisions in two bills based on authority given to him in a separate legislative act. Here, the President suspends a cause of action based on authority given to

him in the same legislative act that created the cause of action. Second, in *Clinton*, the President cancelled provisions in legislative spending bills. It is well-settled that the legislature retains the power of the purse—the power to control budgets and funding. Here, the President has the authority to suspend and reinstate a private cause of action. The presidential action here is different in kind to that of the President in *Clinton*, it does not encroach on a uniquely legislative power. In fact, it is a clear exercise of the executive's power of the sword—to enforce the laws made by Congress. Third, in *Clinton*, the President cancelled provisions for good, without limitation. Here, the President has limited authority to suspend the private cause of action for six months at a time and only if the President gives Congress notice, determines that the suspension is "necessary to the national interests of the United States, and will expedite a transition to democracy in Cuba." 22 U.S.C. § 6085. These guidelines affirm that the provision gave the President the ability to execute the law in a manner consistent with Congressional intent. Accordingly, this Court upholds the Helms-Burton Act as constitutional.

<u>**CONCLUSION**</u>

The Court finds that Plaintiff has sufficiently pleaded the elements of a Title III claim: (1) the Cuban government confiscated the airport on or after January 1, 1959; (2) Plaintiff Regueiro was a United States national when he sued; (3) Plaintiff has a claim to the airport through his possession of CAISA shares; (4) Plaintiff acquired his interest in the airport before March 12, 1996; and (5) Delta Airlines trafficked in the airport by transporting passengers to and from the airport after November 1, 1996.

For the reasons explained above, it is

1. **ADJUDGED** that Defendant's Motion to Dismiss **(D.E. 16)** is **DENIED**.

2. It is further a **ADJUDGED** that Defendant shall file an answer to Plaintiff's Complaint no later than **<u>August 24, 2026</u>**.

DONE AND ORDERED in Chambers at Miami, Florida, this 3rd of August 2026.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record